Patrick Q. Hustead, Esq., Montana Bar No. 4420
Connor L. Cantrell, Esq., Montana Bar No. 54557999
The Hustead Law Firm, A Professional Corporation
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
303-721-5000
pqh@thlf.com; clc@thlf.com
*Attorneys for Zurich American Insurance Company*
*and Fidelity and Deposit Company of Maryland*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | Civil Action No.:  **CV-21-95-BLG**-SPW-TJC |
| **Plaintiff,** | |
| v. | |
| MITCHELL B. GOLDSTEEN; KIMBERLY D. GOLDSTEEN; CMG AC, LLC; CMG MCE, LLC; CMG AC, LLC d/b/a CMG CONSTRUCTION, LLC; FIRSTMARK GROUP, LLC; FIRSTMARK CONSTRUCTION, LLC d/b/a FIRSTMARK FOUNDATIONS, LLC d/b/a CMG CONSTRUCTION, LLC; FIRSTMARK EQUIPMENT, LLC p/k/a CMG MCE, LLC; FirstMark Materials, LLC p/k/a CMG JL, LLC; FirstMark REJL, LLC p/k/a CMG REJL, LLC; and FIRSTMARK RETC, LLC p/k/a CMG RETC, LLC, | **COMPLAINT** |
| **Defendants.** | |

Plaintiff, Zurich American Insurance Company and Fidelity and Deposit company of Maryland (collectively, "Plaintiff," "Zurich," or "Surety"), submits its Complaint against Defendants Mitchell B. Goldsteen; Kimberly D. Goldsteen (collectively, the "Goldsteens"); CMG AC, LLC; CMG MCE, LLC; CMG AC, LLC d/b/a CMG Construction, LLC (collectively, "CMG Entities"); FirstMark Group, LLC; FirstMark Construction, LLC d/b/a FirstMark Foundations, LLC d/b/a CMG Construction, LLC; FirstMark Equipment, LLC p/k/a CMG MCE, LLC; FirstMark Materials, LLC p/k/a CMG JL, LLC; FirstMark REJL, LLC p/k/a CMG REJL, LLC; and FirstMark RETC, LLC p/k/a CMG RETC, LLC (collectively, "FirstMark Entities," and with the Goldsteens and CMG Entities, the "Individual Indemnitors," or "Defendants").

## I.    PARTIES

1.    Zurich is a company organized and incorporated under the laws of the State of Illinois, with its principal place of business located at 1299 Zurich Way ZAIC, Schaumburg, IL 60196.

2.    Mitchell B. Goldsteen is an Individual Indemnitor of Zurich, who has expressed an intent to remain in Maryland indefinitely, and whose last known residence address is 5109 Hampden Lane, Bethesda, MD 20814.  Mr. Goldsteen is the sole managing member of and holds an ownership interest in the CMG Entities and FirstMark Entities.

3.    Kimberly D. Goldsteen is an Individual Indemnitor of Zurich, who has expressed an intent to remain in Maryland indefinitely, and whose last known residence is 5109 Hampden Lane, Bethesda, MD 20814.  Ms. Goldsteen is the wife of Mitchell B. Goldsteen and holds and ownership interest in the CMG Entities and FirstMark Entities through marital right.

4.      CMG AC, LLC is a Delaware corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

5.      CMG MCE, LLC is a Montana corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

6.      CMG AC, LLC d/b/a CMG Construction, LLC is a Montana corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

7.      FirstMark Group, LLC is a Delaware corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

8.      FirstMark Construction, LLC d/b/a FirstMark Foundations, LLC d/b/a CMG Construction, LLC is a Montana corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

9.      FirstMark Equipment, LLC p/k/a CMG MCE, LLC is a Montana corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

10.     FirstMark Materials, LLC f/k/a CMG JL, LLC is a Montana corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

3

11.     FirstMark REJL, LLC p/k/a CMG REJL, LLC is a Montana corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

12.     FirstMark RETC, LLC p/k/a CMG RETC, LLC is a Montana corporation and Indemnitor of Zurich that, at all times alleged herein, conducted business in the State of Montana with its principal place of business located at 6611 Trade Center Ave, Billings, MT 59102.

## II.      JURISDICTION AND VENUE

13.     Zurich hereby incorporates by reference all the allegations contained above as set forth herein.

14.     This Court has personal jurisdiction over the Defendants because the CMG Entities and FirstMark Entities transacted business in and around Billings, Montana, including, but not limited to, performing construction work in and around Billings, Montana, and entering into contracts with Zurich in which Defendants promised to post collateral with Zurich as set forth in the contracts and to reimburse Zurich for, among other things, any losses, expenses, payments, attorneys' fees, costs, incurred by Zurich in the event Zurich incurs losses as a result of issuing construction surety bonds on behalf of the CMG Entities and FirstMark Entities.  As such, the Individual Indemnitors – all Defendants – purposefully availed themselves of the benefits and privileges of conducting business in Montana.

15.     This Court has original subject matter jurisdiction over Zurich's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of Zurich's claims against Defendants exceeds $75,000, and Zurich is a citizen of a different state than each of the Defendants.

16.     As set forth above, Zurich is a citizen of Illinois, where Zurich is incorporated and where its principal place of business is located, while the Goldsteens are both domiciled in Maryland and are therefore citizens of Maryland.

17.     Upon information and belief, after reviewing available underwriting files and researching available information online, Mitchell Goldsteen and/or Kimberly Goldsteen are the sole members of the CMG Entities and the FirstMark Entities.  As such, the CMG Entities and the FirstMark Entities are each citizens of Maryland, the state wherein the members of the CMG Entities and FirstMark Entities are citizens.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Zurich's claim occurred in or around Billings, Montana.

### III.    GENERAL ALLEGATIONS

19.     Zurich hereby incorporates by reference all the allegations contained above as though set forth herein.

**A.    The Bonds**

20.     Zurich, as Surety, has issued surety bonds (the "Bonds") on behalf of FirstMark Construction, LLC d/b/a FirstMark Foundations, LLC d/b/a CMG Construction, LLC (collectively, "FirstMark Construction"), as principal, for at least the following construction projects ("Projects"), including but not limited to:

| Obligee | Project | Bond Number | Penal Sum |
|---|---|---|---|
| City of Billings | Rimtop Drive Overlay | PRF9356405 | $109,243 |
| West Point Contractors, Inc. | Helical Piles | PRF9356404 | $1,290,000 |
| Montana Lines, Inc. | Pedestrian ramp at 29th and 30th Street | PRF9356401 | $66,085 |

| | | | |
|---|---|---|---|
| Sletten Construction Company | Billings Logan International Airport | PRF9316849 | $2,028,256 |
| City of Billings | Solid Waste Container Storage Building | PRF9316848 | $469,665 |
| Sletten Construction Company | Commercial Sidewalk | PRF9316847 | $638,270 |
| Sletten Construction Company | Summit | PRF9316831 | $1,440,111 |
| Sletten Construction Company | Browning | PRF9316828 | $892,857 |
| Sletten Construction Company | Browning | PRF9316827 | $2,561,018 |
| Montana Department of Transportation | Stevensville Highway | PRF9316819 | $12,221,000 |
| Mountain Construction Company | Structural Concrete | PRF9316809 | $1,614,556 |
| Montana Department of Environment | Reclamation – surface or strip mining | LPM9316823 | $253,389 |
| Montana Department of Environment | Reclamation – surface or strip mining | LPM9316824 | $2,127,596 |
| Montana Department of Environment | Reclamation – surface or strip mining | LPM9275333 | $606,588 |

21.     Pursuant to the terms of the Bonds and prevailing Law, Zurich guaranteed that if FirstMark Construction failed to make certain actions, the underlying bonded obligation would become due, and Zurich would pay the debt.  The penal sum of the Bonds exceeds $700,000.

**B.     The Indemnity and Net Worth Agreements.**

22.     As consideration for Zurich issuing the Bonds and other consideration, on or about September 28, 2018, the Goldsteens and the CMG Entities executed a General Indemnity

Agreement (herein referred to as the "GIA") in favor of Zurich. A copy of the GIA is attached as **Exhibit 1** and incorporated herein by reference.

    23.    The GIA provides, in pertinent parts:

        2.    **INDEMNITY**: Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability;

        3.    **SURETY'S RIGHT TO PERFORM, SETTLE AND/OR MODIFY**: Surety shall have the absolute and unconditional right and is authorized but not required to: (a) adjust, pay, perform, decline to perform, compromise, settle, deny, litigate or otherwise resolve any Claim and/or any claim, counterclaim, defense or setoff held by or made against any Indemnitor, Principal or other entity and/or to take any action to protect any rights of surety or to preserve or protect Surety's interest, or to avoid or lessen any alleged liability…;

        4.    **PLACE IN FUNDS**: Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss…;

        5.    **PLEDGE AND ASSIGNMENT OF COLLATERAL**: Indemnitors pledge, assign, transfer and set over to Surety the Collateral, as collateral to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license to use Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract…;

    24.    In conjunction with the execution of the GIA, on September 28, 2018, the Goldsteens and the CMG Entities executed a Net Worth Retention Agreement (herein referred to as the "Net Worth Agreement") in favor of Zurich. A copy of the Net Worth Agreement is attached as **Exhibit 2** and incorporated by referenced herein.

    25.    The Net Worth Agreement provides, in pertinent part:

3.     MINIMUM REQUIRED TANGIBLE NET WORTH: Indemnitors will maintain or will cause to maintain at all times a Minimum Tangible Net Worth equal to or exceeding the sum of Fifteen Million Dollars (USD $15,000,000).

4.     PLEDGE: Indemnitors covenant and agree that they shall not take or permit the following actions that will reduce the Minimum Required Tangible Net Worth, without the prior consent of the surety:

a.     Any distribution or payment of dividends, excluding the normal salary, business reimbursement expense and management fee;

b.     Any loans or transfer of assets to any person or entity that does not indemnify the Surety under the GIA;

c.     A sale or other disposition of assets (including equipment) to any other Indemnitor or any other person or entity;

d.     Any assumption, guarantee, endorsement, or agreement to become liable, either directly or indirectly, for any obligation of any person or entity that does not indemnify the Surety under the GIA; or

e.     Any action which may cause a reduction in the Minimum Required Tangible Net Worth, except losses from operations provided that operations involving persons or entities related to the Indemnitors do not result in such loss.

5.     NOTICE:

a.     Indemnitors shall notify Surety in writing within twenty (20) Business Days of the occurrence of any other following:

1.  Any Event of Default under this NW Agreement; or

2.  Insolvency of any Indemnitor.

26.     On April 24, 2019, the Goldsteens and the CMG Entities executed a Rider Adding Additional Indemnitors to General Indemnity Agreement (herein referred to as the "Rider Agreement"), which added the FirstMark Entities as additional individual indemnitors to the GIA. A copy of the Rider Agreement is attached as **Exhibit 3** and incorporated by reference herein.

27.     The Rider Agreement provides, in pertinent part:

2.     FirstMark Group, LLC and FirstMark Construction, LLC dba FirstMark Foundations, LLC dba CMG Construction, LLC and FirstMark Equipment,

LLC and FirstMark Materials, LLC and FirstMark REJL, LLC and FirstMark RETC, LLC unconditionally acknowledge, accept, assume and undertake all indemnity obligations to Surety arising from or related to the Indemnity Agreement, jointly and severally with the Current Indemnitors;

3.    Said addition of FirstMark Group, LLC and FirstMark Construction, LLC dba FirstMark Foundations, LLC dba CMG Construction, LLC and FirstMark Equipment, LLC and FirstMark Materials, LLC and FirstMark REJL, LLC and FirstMark RETC, LLC to the Indemnity Agreement shall be immediately effective as of the date of this Rider, in accordance with the terms and conditions of the Indemnity Agreement, for all past, present, and future obligations and liabilities of Current Indemnitors and FirstMark Group, LLC and FirstMark Construction, LLC dba FirstMark Foundations, LLC dba CMG Construction, LLC and FirstMark Equipment, LLC and FirstMark Materials, LLC and FirstMark REJL, LLC and FirstMark RETC, LLC to Surety under the Indemnity Agreement;

4.    Nothing in this Rider shall waive, alter or amend the terms and conditions contained in the Indemnity Agreement, other than as indicated above;

6.    The Rider shall be attached to and shall form part of said Indemnity Agreement, which is also incorporated into this Rider by reference.

28.    Pursuant to the GIA and the Rider Agreement, FirstMark Construction and the Individual Indemnitors agreed, among other things, to exonerate, indemnify, and hold Zurich harmless from any and all liability for losses, costs, damages, attorneys' fees, and expenses of whatever kind that Zurich may sustain or incur by reason of having executed any bonds for or at the request of FirstMark Construction.  FirstMark Construction and the Individual Indemnitors also promised to place Zurich in funds sufficient to cover any and all actual and potential liability the Zurich might incur as a result of the claims on any bonds.

29.    By virtue of the definitions and representations in the referenced GIA and Rider Agreement, FirstMark Construction and the Individual Indemnitors are, *inter alia*, obligated to post collateral with Zurich, cooperate with Zurich's investigation into claims, and are jointly and

severally liability to Zurich as set forth herein.  The Defendants have those obligations at common law as well.

30.     Additionally, pursuant to the Net Worth Agreement, FirstMark Construction and the Individual Indemnitors agreed, among other things, to maintain a minimum net worth of $15,000,000, that they would not take and/or permit any actions that would reduce the $15,000,000 minimum net worth without the prior consent of Zurich, and that they would not pledge or sell any assets without the prior consent of Zurich.

**C.**    **Payments Made on Behalf of FirstMark Construction.**

31.     To date, Zurich has received claims on the Projects alleging that FirstMark Construction failed to perform its obligations on the bonded contracts.   The claims currently total more than $7.2MM

32.     As of August 25, 2021, the total outstanding balance of funds Defendants owe to Zurich for satisfaction of payment and performance bond claims and surety advances is at least $1,122,382.04.

33.     Through May 31, 2021, Zurich has incurred over $19,400.76 in attorneys' and consultants' fees, costs, and expenses, and expects to continue incurring attorneys' fees, costs, and expenses on a near daily basis until this matter is resolved.

34.     As a result of these claims and accruing costs, Zurich is exposed to substantial losses under its Bonds, for which Defendants are jointly and severally liable.

35.     In an attempt to ascertain FirstMark Construction's financial condition and status of projects (including an accounting of amounts received from project owners and amounts

owed/paid to subcontractors and suppliers), Zurich requested that FirstMark Construction and the Individual Indemnitors provide Zurich with FirstMark Construction's sworn financial statements.

36.     FirstMark Construction failed or refused to provide Zurich sworn financial statements.

37.     Upon information and belief, Mitchell Goldsteen is currently working for Oroco Capital in Bethesda, MD and has likely received funds from his investments with this company.

38.     Instead of using these funds to repay Zurich pursuant to the GIA and Rider Agreement, Mitchell Goldsteen used funds for his own purposes and to benefit the Individual Indemnitors, leaving Zurich exposed to losses.

39.     Zurich is concerned that there will be a shortfall on funds available to repay Zurich for FirstMark Construction's Projects pursuant to the GIA and Rider Agreement.

**D.    Zurich's Demands for Indemnity**

40.     On or about June 7, 2021, formal notice and demand was made on behalf of Zurich to FirstMark Construction and the Individual Indemnitors regarding their joint and several duties to defend and indemnify Zurich from and against all liability and loss relating to FirstMark Construction's Projects, including, but not limited to, bond payments, costs, accrued interest, and attorneys' fees.  A copy of the June 7, 2021 indemnity demand is attached as **Exhibit 4** and incorporated herein by reference.

41.     Zurich has made repeated informal indemnity demands via emails and requested financial information from FirstMark Construction.

42.     Zurich has not received a response to these demands from FirstMark Construction or the Individual Indemnitors indicating that they will comply with their obligations under the GIA and/or Rider Agreement.

43.     The failure of FirstMark Construction and the Individual Indemnitors to respond to Zurich's indemnity demands has exacerbated Zurich's concerns about FirstMark Construction and the Individual Indemnitors' ability and intention to satisfy bonded obligations.

44.     Unless and until the injunctive relief requested herein is granted, there is a clear and present threat that Zurich will lose the benefit of its bargains with Defendants. Since all defaults have occurred, claims have been paid, and Zurich is now forced to initiate litigation against FirstMark Construction and the Individual Indemnitors, Zurich is entitled to its protections guaranteed by the GIA, Rider Agreement, and common law.

45.     FirstMark Construction and the Individual Indemnitors must grant full and immediate access to their financial condition and immediately post collateral of no less than $7,000,000.00, failing which Zurich should be entitled to liens as requested herein. This is nothing more than what is dictated by the GIA or equitable under the circumstances.

## FIRST CLAIM FOR RELIEF
### (Breach of Express Contract)

46.     Zurich hereby incorporates by referenced all the allegations contained above as though fully set forth herein.

47.     The Defendants entered into a valid and enforceable contracts – the GIA, Rider Agreement, and Net Worth Agreement - with Zurich.

48.     Sufficient consideration supports the GIA, Rider Agreement, and Net Worth Agreement.

49.     Zurich substantially performed its obligations, if any, under the GIA, Rider Agreement and/or Net Worth Agreement.

50.     The Defendants failed to meet their obligations under the GIA, Rider Agreement and/or Net Worth Agreement, which constitutes a material breach.

51.     Defendants' breach of the GIA, Rider Agreement, and Net Worth Agreement has damaged Zurich, and Defendants are liable to Zurich for all losses and expenses incurred by Zurich as a result of the issuance of the Bonds, including, but not limited to, bond payments, attorneys' fees, consultant fees, expenses, and costs, all as provided by the terms of the GIA, Rider Agreement, and Net Worth Agreement.

**SECOND CLAIM FOR RELIEF**
**(Common Law Indemnification Against FirstMark Construction, LLC d/b/a FirstMark Foundations, LLC d/b/a CMG Construction, LLC)**

52.     Zurich hereby incorporates by reference all the allegations contained above as though fully set forth herein.

53.     FirstMark Construction, as the principal under the Bonds, is required to indemnify and hold Zurich harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by Zurich on account of the issuance of the Bonds.

54.     Zurich has made demand upon FirstMark Construction to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bonds.

55.     FirstMark Construction has failed to meet its obligations to Zurich under Montana law.

56.    First Mark Construction's failure to meet its obligations to Zurich under Montana law has damaged Zurich, and Zurich is entitled to damages

### THIRD CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance Against All Defendants)

57.    Zurich hereby incorporates by reference the allegations contained above as though fully set forth herein.

58.    Pursuant to the GIA and Rider Agreement, the Defendants are required to place Zurich in sufficient funds to cover any and all losses or expenses, including attorneys' fees and consultant's fees and costs, incurred or to be incurred by Zurich as a result of the issuance of the Bonds.

59.    There is no adequate remedy at law for Zurich to recover the benefit of the GIA and Rider Agreement.

60.    Pursuant to the Net Worth Agreement, the Defendants are required to maintain at all times a minimum tangible net worth equal to or exceeding the sum of Fifteen Million Dollars ($15,000,000.00), and they are not permitted to reduce the minimum tangible net worth without the prior consent of Zurich, nor are they permitted to pledge or sell assets without the prior consent of Zurich.

61.    There is no adequate remedy at law for Zurich to recover the benefit of the Net Worth Agreement.

62.    Zurich has performed any obligations owed to the Defendants under the GIA, Rider Agreement, Net Worth Agreement, and/or Bonds.

14

63.    Zurich requests specific performance on the provisions of the GIA, Rider Agreement, and Net Worth Agreement, which require Defendants to grant access to books and records and/or to place Zurich in sufficient funds to cover any possible liability or loss for which Defendants are or will be obligated to indemnify Zurich under the terms of the GIA, Rider Agreement, and Net Worth Agreement.

64.    If Defendants have not or cannot place Zurich in sufficient funds, Zurich requests an equitable lien in the amount of no less than SEVEN MILLION DOLLARS ($7,000,000.00) ("Lien Amount") on any real property owned by the Defendants including, but not limited to, 5109 Hampden Lane, Bethesda, MD 20814 (the "Property").

65.    If the Defendants do not or cannot place Zurich in sufficient funds, Zurich requests that FirstMark Construction enter into a monthly repayment plan based on Zurich's review of FirstMark Construction's books and records in order to indemnify Zurich under the terms of the GIA, Rider Agreement, and Net Worth Agreement.

## FOURTH CLAIM FOR RELIEF
### (Injunctive Relief – *Quia Timet* Against All Defendants)

66.    Zurich hereby incorporates by reference the allegations contained above, as though fully set forth herein.

67.    Under the equitable doctrine of *quia timet*, Zurich is entitled to have Defendants place funds or other security with Zurich sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of the breach of the GIA, Rider Agreement, and Net Worth Agreement, or a breach of any other agreements, court costs, counsel fees, costs of investigation, accounting, engineering, construction

management, and any other outside consulting fees from and against an and all such losses, fees, costs, and expenses, which Zurich may sustain or incur by reason or consequence of having issued the Bonds as set forth more fully above and in the GIA, Rider Agreement and/or Net Worth Agreement.

68.     Despite demand, Defendants have failed to place Zurich in such funds in direct contravention of Zurich's *quia timet* rights.

69.     Pursuant to the terms of the Bonds, Zurich has guaranteed that if FirstMark Construction fails to take certain actions, the underlying bonded obligation will become due, and Zurich will pay the debt.

70.     Unless Zurich obtains an Order establishing equitable liens, Zurich will not be adequately secured for its obligations under the Bonds.

71.     If Zurich is unable to obtain an Order requiring Defendants to place Zurich in collateral as requested by Zurich's demands, Zurich will be irreparably harmed.

72.     Zurich is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and Zurich will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

73.     Zurich is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting Zurich a valid equitable lien in the Lien Amount upon all assets and real property in which the Defendants have an interest, such liens to remain in place until Zurich has been placed in funds, and retraining FirstMark Construction and the Individual Indemnitors from

transferring, disposing, or otherwise liquidating any property owned by Defendants, real or personal, beyond reasonable living expenses, during the pendency of this matter.

74.     Zurich should also be given a valid equitable security interest in the Lien Amount on any and all rights, title and interest of Defendants in and to all items, property, documents, etc., as identified in the GIA, the Rider Agreement, and/or the Net Worth Agreement.

75.     Upon information and belief, Defendants have equity in the Property described above and/or have received and continue to receive income and/or other intangible benefits from the operation of FirstMark Construction as a direct result of Zurich's issuance of the Bonds or other agreements.  The interests of equity and fairness dictate that such equity, income and/or other intangible benefits be converted to equitable liens until Zurich is repaid.

**FIFTH CLAIM FOR RELIEF**
**(Unjust Enrichment – Equitable Liens Against All Defendants)**

76.     Zurich hereby incorporates by reference the allegations contained above, as though fully set forth herein.

77.     Zurich conferred a benefit on Defendants by extending surety credit and/or issuing the Bonds on behalf of FirstMark Construction.

78.     Defendants accepted and appreciated that benefit by profiting from FirstMark Construction's operations, which would not have been possible without the issuance of Zurich's surety credit and/or the Bonds.

79.     Defendants further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of Zurich's surety credit and/or the Bonds.

80.    Defendants agreed to defend, indemnify, and post collateral with Zurich in exchange for and pursuant to the terms of the GIA and Rider Agreement.

81.    By failing and refusing to do so, Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which Zurich is entitled pursuant to the GIA, Rider Agreement and/or common law.

82.    It would be inequitable for Defendants to retain the benefit of Zurich's surety credit and/or the Bonds without complying with their concomitant obligations under the GIA, Rider Agreement, Net Worth Agreement, and/or common law to post collateral as promised to protect Zurich from losses.

83.    Under the circumstances and given the surety relationship between Zurich and Defendants, general considerations of right and justice dictate that Zurich be granted the right to have Defendants' assets applied to their obligation to post collateral with Zurich.

84.    Zurich requests an equitable lien in the amount of no less than SEVEN MILLION DOLLARS ($7,000,000.00) ("Lien Amount") on any real property owned by the Defendants, including but not limited to, 5109 Hampden Lane, Bethesda, MD 20814 (the "Property").

85.    Zurich should also be given a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendants in and to all items, property, documents, etc. identified in the GIA and Rider Agreement.

### SIXTH CLAIM FOR RELIEF
### (Declaratory Relief – Assignment Against All Defendants)

86.    Zurich hereby incorporates by reference the allegations contained above, as though fully set forth herein.

87.    An actual and substantial dispute exists between Zurich and Defendants with respect to Zurich's rights to be placed in funds and indemnified from loss under the Bonds.

88.    A prompt and judicial determination of the respective rights of the parties in these respects is necessary and appropriate.

89.    Pursuant to the GIA and Rider Agreement, Defendants assigned certain rights to Zurich, and the assignments have been triggered by Defendants' defaults under the Bonds, GIA, and Rider Agreement.

90.    Zurich seeks a declaratory judgment that any and all of the assignment provisions have been triggered and the assignments should be effectuated and enforced until such time that the Lien Amount is satisfied, and such amount is paid in good funds to Zurich.

## IV.    <u>CONCLUSION</u>

WHEREFORE, fore the foregoing reasons, Zurich requests judgment against Defendants as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorneys' fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by Zurich as a result of Defendants' breach of the GIA and Rider Agreement, as well as specific performance of the same;

- For all Defendants to indemnify and hold Zurich harmless from and against any and all liabilities, losses, and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorneys' fees, imposed upon, sustained or incurred by Zurich on account of the issuance of the Bonds;

- Due to Defendants' failure or inability to place Zurich in sufficient funds, Zurich requests an equitable lien in the Lien Amount (including attorneys' fees, costs and expenses) to be

placed on any real property owned in whole or in part by the Defendants, including, but not limited

5109 Hampden Lane, Bethesda, MD 20814.

• Zurich requests a valid security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendants in and to all items, property, documents, etc. identified in the GIA and Rider Agreement;

• For preliminary and permanent injunctive relief requiring Defendants to grant access to books and records and to place Zurich in funds by money, property, liens or security interests in real or personal property, as determined by Zurich, and retraining each of Defendants' two members and the Individual Indemnitors from transferring, disposing or otherwise liquidating any property, real or personal, beyond reasonable living expenses, during the pendency of this matter;

• For such further relief as the Court deems just and proper.

Respectfully submitted this 7th day of September, 2021.

THE HUSTEAD LAW FIRM
*A Professional Corporation*

*Original Signature is on file at The Hustead Law Firm, A Professional Corporation*

s/ Patrick Q. Hustead
Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
The Hustead Law Firm, *A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
(303) 721-5000
pqh@thlf.com
clc@thlf.com
*Attorneys for Plaintiff*

<u>Address of the Plaintiff</u>:
1299 Zurich Way ZAIC
Schaumburg, IL 60196